IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

**REPORT AND
RECOMMENDATION**

JAVAUGHAN PARKER,
                Defendant.

08-CR-254(S)(M)

---

       This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [14].[1] Before me is defendant's motion and supplementary motion to suppress physical evidence [35, 53].[2] A suppression hearing was held on January 22, 2010 [51] at which Buffalo City Court Judge David Manz and Buffalo police detective Gary Teague testified, following which the parties submitted post-hearing briefs [53, 54]. For the following reasons, I recommend that the motion be denied.

## BACKGROUND

       In an indictment dated September 18, 2009 [1], defendant is charged, *inter alia*, with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §841(a)(1). He moves to suppress evidence seized at 18 Roebling Avenue in the City of Buffalo pursuant to a search warrant issued by Judge Manz on January 16, 2008.

---

[1]      Bracketed references are to CM-ECF docket entries.

[2]      Although defendant initially sought additional forms of relief, he has acknowledged that with the exception of suppression, his other requests for relief are moot [42].

Judge Manz testified that he has been a Buffalo City Court Judge for 18 years, during which time he has handled 750-1000 search warrant applications (T4-5).[3] He described his typical procedure for an *in camera* application, whereby a detective presents an application and produces a confidential informant ("CI") in support of the application. He records the proceedings with a cassette recorder if no court reporter is available. He would typically swear the CI and question him/her regarding the application (T6).

He identified Gov't Ex. 2 as the search warrant which he signed on January 16, 2008, and Gov't Ex. 3 as the application for the search warrant, which was presented to him by detective Teague (T7). He recalled receiving a phone call from Buffalo police officer Wendy Collier at home that evening, who requested his assistance, as the on-duty judge was not available (T7-8). He proceeded to the D District police office on Hertel Avenue, where he met with detective Teague, Buffalo police officers Collier and Dennis Gilbert, and the CI, who was a black male in handcuffs (T8).

Judge Manz went into a conference room, where the CI sat across the table from him (T9). Detective Teague handed him the search warrant application, which he reviewed. Detective Teague swore to the affidavit before him (T13). Judge Manz then turned on and tested his cassette recorder, swore in the CI, and questioned him regarding the information on the application. He asked the CI whether he was familiar with 18 Roebling, whether that address was occupied by defendant, whether defendant was known by the name of Bean, whether the CI had witnessed Bean exchanging money for crack cocaine between January 6-16, whether the CI was familiar with cocaine because he has used it himself, whether the CI had observed crack cocaine

---

[3]     Parenthetical references are to pages of the hearing transcript [51].

in the past at that address, and the CI answered yes to all of these questions in a straightforward manner (T11-12). He asked the CI why he was offering this information, and the CI replied that he was trying to help himself regarding his own pending criminal charges (T12).

After signing the warrant, Judge Manz placed the cassette tape (Gov't Ex. 4) in a locked facility for storage (T17). When asked to find it by the US Attorney's office, he listened to the tape approximately one month prior to the suppression hearing, and learned for the first time that it was blank (T17). Nevertheless, he stated that there was no question in his mind that the CI agreed with all the information on the application (T21).

Detective Teague testified that he has been a detective for 20 years (T22), and that his job is to debrief arrestees to obtain information for search warrant applications (T23). He has applied for several hundred search warrants, 80-90% of which were based upon *in camera* testimony (T24). He recalled that officers Collier and Dennis Gilbert introduced him to the CI, and that he spoke to them and debriefed the CI to see if his information was timely and credible (T25-6). He noted that on occasions where he concluded that a CI was not credible, he would not apply for a search warrant (T26). However, he concluded that this CI "had good knowledge of what they were talking about" (T26). He then typed the application (T27). He was present while Judge Manz interviewed the CI (T28).

**ANALYSIS**

A.    **Legality of the January 2008 Search and Seizure**

    1.    **Existence of Probable Cause for the Search Warrant**

        In attacking the validity of the January 16, 2008 search warrant executed by Judge Manz, defendant argues that the failure to preserve the recording of the CI's testimony violates New York Criminal Procedure Law ("CPL") §690.40(1) ("In determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court"). However, he admits that "this is a statutory, not a constitutional requirement". Defendant's supplementary motion [53], p. 5. *See* United States v. Fountaine, 2008 WL 4239950, *1 (W.D.N.Y. 2008) (Skretny, J./Scott, M.J.) ("It appears that no transcript, audio recording, or verbatim stenographic or longhand notes were made of the colloquy between the CI and Judge Franczyk . . . . The failure to comply with a state law regarding the process to be used in dealing with a warrant application does not, by itself, require the suppression of evidence obtained as a result of the execution of the search warrant").

        For example, in People v. Russo, 171 Misc.2d 154 (Cattaraugus Co.Ct. 1996), the court held that the failure of a tape recording of the CI's testimony did not require suppression if the existence of probable cause (including the informant's reliability) could be established by other means. In this case, the affidavit itself lends credence to the CI's statements, because it alleges that the CI admitted that he "has in the past sold crack cocaine so knows what it looks and

-4-

feels like" (Gov't Ex. 3, ¶2).[4] "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility - sufficient at least to support a finding of probable cause to search." United States v. Harris, 403 U.S. 573, 583 (1971).

In view of this statement against penal interest, the fact that the CI told Judge Manz that he was trying to help himself with his own criminal charges does not significantly affect his credibility. "That the informant may be . . . promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." Id. at 584. In fact, defendant himself admits as much: "the 'veracity' prong is satisfied . . . by proof that the informant gave his information against his penal interest". Defendant's supplementary motion [53], p. 13.

Defendant notes that "no crack cocaine was ultimately found in the search of 18 Roebling and no drugs were found in the kitchen of 18 Roebling through the execution of the search warrant". Id., p. 3. However, that fact does not bear on whether there was probable cause to believe that contraband was located at the premises when the warrant was executed. Indeed, that determination would not be affected even if it were subsequently determined that the CI had lied to detective Teague and Judge Manz. "The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." United States v. Smith, 9 F.3d 1007, 1014 (2d Cir. 1993); Foster v. Does, 1991 WL 123959, *3

---

[4]     While defendant suggests that absent the recording there is no proof that detective Teague swore to the affidavit before Judge Manz, the affidavit itself indicates that he did. Gov't Ex. 3, p. 3

(S.D.N.Y. 1991) ("Even if it is true that the allegations of the supporting affidavit are ultimately found not to be true, that does not affect our assessment that issuance of the search warrant was justified given the information available to Judge Bramwell at the time.").

Since the affidavit furnishes probable cause for the search warrant, the fact that the recording of the CI's interview no longer exists is not fatal. "The fact that much of the information contained in an affidavit is not based on first hand knowledge is not, in and of itself, material to the viability of that affidavit and the warrant. Furthermore, it is clear . . . that reliance on a confidential informant is permissible in an affidavit submitted in support of a request for a search warrant . . . . The only questions for the Court are whether the affiant's reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant." Smith, 9 F.3d at 1013.

"After-the-fact scrutiny by courts of the sufficiency of an affidavit applying for a warrant should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts . . . . The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 1012. Giving appropriate deference to Judge Manz's determination of probable cause, I conclude that the search warrant which he executed on January 16, 2008 was valid.

2.      **Leon's "Good Faith" Exception**

The government argues in the alternative that even if the search warrant executed by Judge Manz was defective, the search should be upheld because the police relied in good faith

upon that warrant: "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause . . . . In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Government's response [37], p. 13 (*quoting* United States v. Leon, 468 U.S. 897, 921(1984)); *see also* government's post-hearing response [54], pp. 15-18. Defendant fails to address this argument.

Leon holds that evidence seized pursuant to an invalid search warrant need not be suppressed "when an officer acting with objective good faith has obtained [the] warrant from a judge or magistrate and acted within its scope". 468 U.S. at 920. "The prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time". Id. at 924.

Detective Teague testified that he personally interviewed the CI to ascertain his reliability before submitting the application, and that he was present when the CI was again interviewed by Judge Manz. He cannot be expected to know that the tape recording was malfunctioning. "We do not see how [the police officer], or for that matter anyone, could be charged with knowledge that . . . the recordation requirements of §690.40(1) had not been met in this case . . . . Thus, even on the tenuous assumption that the warrant was not supported by probable cause, [the police officer] was justified in relying upon Judge Violante's determination to issue it. *Leon* therefore precludes suppression of the evidence seized when the warrant was executed." Smith, 9 F.3d at 1015-16.

For these reasons, I conclude that Leon's "good faith" exception would bar suppression of the seized evidence even if the search warrant were invalid.

**B.    Legality of Subsequent Searches**

Defendant argues that "as a direct consequence of the evidence obtained during [the] January 21, 2008 search, a federal search warrant conducted a year later on January 7, 2009 at 323 Chelsea Place and 97 Guilford Street in Buffalo, New York and a 2003 Chevrolet Tahoe must likewise be suppressed as 'fruit of the poisonous tree'". Defendant's supplementary motion [53], p. 1. However, since I conclude that the initial search was valid, I find no basis to suppress the evidence seized as a result of these searches.

## CONCLUSION

For these reasons, I recommend that defendant's motions to suppress evidence [35, 53] be denied. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by June 1, 2010 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED:     May 13, 2010

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge